The next case on the calendar is Corrado v. New York State Unified Court System. Good morning. Good morning, Judge Livingston. May it please the court. My name is Nicole Corrado. I am the appellant. I am the plaintiff in this case. I am here to request that this court reinstate my case in its entirety and to argue that the lower court abused its discretion in dismissing my case with prejudice at the stage and during the posture of the case when it was dismissed. I would argue and submit to this court that the lower court not only abused her discretion, but there was a gross abuse of discretion. The hostility, the bias— Ms. Corrado, could you— Yes, Your Honor. With respect to your April 4, 2016 letter, how do you suggest that we interpret that letter? What were you requesting at that stage? I was asking the court for assistance. I had no attorney. I had no file. I was under extreme  Right. But what the letter says is, this case has had dire consequences and effects on my daughter, and I cannot continue to allow this situation to further adversely affect her life. Unfortunately then, after many years of living this perpetual nightmare, I wish to discontinue this litigation. Now, how are you suggesting the district court should have read that request as a motion to dismiss without prejudice, as a motion to dismiss with prejudice, as not a motion to dismiss at all? What was that letter, and how did the district court abuse its discretion in reading it? That is a terrific question, and I believe there is absolutely no request for a dismissal, nor would I. After four years of litigation, there had been no depositions. There had been repeated motions to dismiss my amended complaint. What did you mean then, I wish to discontinue this litigation? I was requesting— How could the court have taken that? I was requesting that it be put on an abeyance calendar until such time that I had a lawyer, and until such time that I would be able to proceed, but not under any circumstances to dismiss. If we agree with that reading, or think that at least the district court . . . it was sufficiently ambiguous that the district court should have brought you in and asked you, what exactly do you want here? Then what would follow from that? Would we not have to send it back to the district court and say, to the same judge or a different judge, that's another issue that you're raising. Would we not have to send it back to some district court and say, now you should do that. Now you should interpret . . . bring in Ms. Corrado and ask her what she meant, and then you would say, I want to put this case on the suspense calendar because I still don't have a lawyer. Is that what you're requesting happen? I think it would have been certainly much more prudent had the district court asked or asked for a hearing to be held and for any further elaboration. I think the circumstances were dire at the time in light of the situation. Okay, I understand that, but I'm trying to understand what you want us to do today. Do you want us to send this back to the district court and say, what should have been done before was to ask Ms. Corrado what she really wants? Then if that happens, what are you going to tell the district court you really want today? Well, I'm asking that the case be reinstated and sent to a different district court. Well, reinstated as of the point at which that letter was sent? Actually, there are a number of errors that took place during the course of my case. The amended complaint that was filed in November of 2013 . . . Well, I understand you're talking about the statute of limitations rulings. Correct. First of all, I have a little trouble understanding why we have appellate jurisdiction to reach that, but I'm still trying to get at what you really want done if the error of the district court was to dismiss the case with prejudice and what the district court should have done was grant your request to put the case on suspense until you had a lawyer. Is that not what we should have the district court do? Send it back and say, look, what Ms. Corrado really wanted was to have this case put on a suspense calendar until she could find a lawyer. Do that. Is that what you're asking us to do? I am. I am asking. That is clearly a very good option and I would be perfectly receptive to it. In other words, you don't want to send it back to the district court so that you now can litigate it pro se. You still don't want to do that? I have . . . Or do you want to do that? I don't want to put words in your mouth. I understand. Thank you. No, I have never had any intention of proceeding pro se. My experience as an attorney has never been in the field of employment law and nor has it ever been in federal practice. The crux of the problem here is the extreme egregious misconduct by counsel on behalf of the defendants, both at the New York State Unified Court System level and at the Attorney General's office that prompted, I think, the district court to dismiss this case because of the very . . . Let me ask you a question. Yes, Judge. When the district court received your letter, it had said to you, I'll grant your request to discontinue the case, but it would be with prejudice. What would you have done? Oh, I would have said that is not my request to have the case be . . . Well, would you have been willing to litigate it pro se? I would have asked for the opportunity, although I . . . I think the problem is you had been given a lot of time to find a lawyer and at some point, a trial judge has to say enough is enough. You've had enough time. At that point, either go forward pro se or discontinue with prejudice. What I'm asking you is, if you were confronted with that choice, that is discontinue with prejudice or proceed pro se, what would you have done? I would have proceeded pro se, even as, unfortunately, I would prefer not to have, but I think that there have been . . . If you were put to the same choice, if we were to send this back again, is that the choice you would make today? You would proceed pro se? The choice I would make is to secure counsel. Again, I called many, many, many attorneys. I think that there's been a very, very evil plot here. It sounds bizarre, but I've been living a nightmare for over ten years. There is no way that I would request my case to be dismissed in light of . . . You'd continue to try to find a lawyer? Absolutely. The point is, how much more time should you be given to find a lawyer? These things can't be held indefinite. I thought you did find a lawyer. You had lawyers as late as when the brief was filed in this case. Yes. You did file the brief on your behalf. What happened to them? My appellate lawyer . . . Again, this is the irony of this entire case, because the attorneys that I've hired, they were paid. They weren't representing me for free. I've lost extraordinary . . . As I said, my career, personal life . . . I'm sorry. I don't mean to interrupt you, but I did have a very simple question. What happened to those lawyers? Did they quit? Did you fire them? What happened? Those lawyers behaved in the most unprofessional and belligerent manner against me, toward me, which was completely . . . What occurred was . . . You filed a great brief on your behalf that made exactly the arguments that you've just made to us. Mr. Langone, when I hired him, I understood that he had vast experience in federal appellate practice. It was understood that he would handle the appeal, he and Mr. Tamao. There was a point where we spoke on a phone. Actually, it was on the eve of when my brief was due. Mr. Langone, on the other hand, flashed out at me, calling me the most vicious and vile names. I will repeat them. I wrote them in my correspondence to the court. It was . . . Okay, so that's why you fired them. Yes. That's one of the reasons. I was completely . . . It was unexpected. There's absolutely no provocation or reason for that, except the fact that he told me to work on the brief, the draft, make corrections and edit, and to have it back to him the evening before it was due. I did. I worked on it. I tried to correct lots of different factual errors and some other procedural inconsistencies that needed to be corrected. In any event, Mr. Langone, and I think I should explain, the names that he called me were an effing bitch, an effing liar, an effing idiot. I mean, he went on and on. I'm not trying to get into whether you correctly fired him or had grounds or whatever. I just wanted to know what happened to those lawyers. The answer was, you dismissed them because you were not satisfied with their services because of their abusive conduct, and that's . . . Okay. The abusive conduct was severe. Fair enough. Unfortunately, I've been . . . The abusive conduct has been ongoing from the outset of this case. That's part of the problem with the lower court, because they created such a chilling effect that no lawyers, no legitimate reputable attorneys wanted to get involved, because every single time we asked for any type of relief, substantial requests for important matters, the lower court, whether it would be the magistrate or the district court judge, would repeatedly threaten my attorneys. Yes. We have you briefed on that. The red light's on. Yes. Let's hear from your adversaries. Yes. Thank you, Judge. Good morning. David Lawrence, III, Assistant Solicitor General, appearing on behalf of the individual defendants at Belize. The district court properly dismissed this action with prejudice. Ms. Corrado had requested dismissal of her action in her April 4, 2016, letter. Under Federal Civil Procedure 41A2, because defendants had already answered the complaint, she could only obtain such a dismissal by court order on terms that the court considered just improper. Here, the district court reasonably construed Ms. Corrado's letter to the court of seeking, or at least accepting, dismissal with prejudice. The letter was written after she had fired her three counsel a total of four times. The letter stated that she tried and failed to obtain replacement counsel, and that she would not and could not receive pro se. Should the district court have made it clear that the dismissal was going to be with prejudice and given her a chance to withdraw her request to discontinue? No, Your Honor, not based on the terms of the letter. The letter stated that Ms. Corrado had found the action to be a nightmare that she wished to end, that it was causing serious harm to the mental health of her daughter, which she could not allow to continue. Even if she obtained counsel, those factors would not terminate. There was no indication in her letter that any of the things that she, uh, were her motives for dismissing the action could be remediated. Uh, the dismissal of the action with prejudice is also supported by the factors that this court set forth in the Zagano v. Fordham University case. As to three of those factors, the plaintiff's diligence in bringing the motion, the extent to which the suit had progressed, and the duplicative expense of litigation, the suit had already been pending for four years when Ms. Corrado sought its dismissal. There had been discovery and extensive motion practice, so that if the case were at some point refiled, there would be a substantial expense of relitigation. As to the fourth Zagano factor, the manner in which Ms. Corrado conducted the litigation was unduly vexatious. She was repeatedly admonished by the court for failing to meet her discovery obligations, for filing frivolous motions, and for failing to attend court-ordered conferences. As to the final Zagano factor, the adequacy of the plaintiff's explanation for the need to dismiss, she explained that she was unable to obtain a replacement counsel, and that she wished to end the distress that the litigation was causing to her family. Therefore, the district court reasonably extruded Ms. Corrado to be accepting the possibility of dismissal with prejudice. You say accepting the possibility. I mean, the district court did not say, after getting Ms. Corrado's letter, well, she says she wants to discontinue the litigation. The reasons she gives make it clear that this is a request for dismissal with prejudice to end the nightmare, and I hereby grant it. Instead, the district court said that the plaintiff may only dismiss her case under Rule 41A2, which requires an order of this court on terms the court in effect. I consider that it's just and proper to dismiss it with prejudice. Why doesn't that implicate the obligation in our cases to make clear to Ms. Corrado, this is what's going to happen. If you want this dismissed, I'm going to dismiss it with prejudice. The district court didn't just say, you asked for it, and you got it. The district court seemed to treat this as at least an ambiguous request, and then to set reasonable terms. Why doesn't the district court have to make clear that that's what's going to happen, and give the plaintiff the opportunity to withdraw the request? Judge Lynch, in the first part of that docket entry, the court had stated that the plaintiff had advised the court that since discharging her previous attorney, she has not been able to obtain new counsel, and that she refused to prosecute her case pro se. The district court was recognizing this was an obstacle to the plaintiff, that the plaintiff did not see any chance of correcting, and the plaintiff had already told the magistrate judge that she had contacted, she said, thousands of attorneys, and then in the litigate letter to the district court, she said, she talked about her tremendous efforts to find replacement counsel. The district court was aware of her history of having fired many counsel in the case, and so it was reasonable for the court to construe the letter as asking for dismissal with prejudice. Unless the court has any further questions, the individual defendants will rest on their brief. Thank you. Good morning. Wendy Stryker for Vincent Ranieri. I'm from Frankfurt, Kernick, Klein & Selz. While I agree with everything Mr. Lawrence has said, Mr. Ranieri stands in a very different position from the rest of the individual defendants, because he, all of the claims against Mr. Ranieri were dismissed on statute of limitations grounds by order of the court in February, two months before the April order that is the subject of this appeal, and we don't believe that this court actually has appellate jurisdiction to reach the arguments brought to reinstate the claims against Mr. Ranieri. And that would be because if the plaintiff is correct in her principal argument, this was really just a request to dismiss without prejudice, which is not a final order, and therefore the case is not, if we were to accept that argument, the case wouldn't be over. The case wouldn't be over? Well, it wouldn't be over. As to those other people. As to those other people, but it still would against Mr. Ranieri. Well, except to the extent that if, at some future date, there is a final judgment that disposes of the case as to all parties, then she would be in a position to appeal the, everything that went up if she chose to do so, right? Well, but not with respect to the arguments that she's made here, because the arguments she has raised about statutes of limitations are arguments that could have been made to the court below on the motion to dismiss, but were not. But that all goes to the merits of the thing that you're telling us we don't have jurisdiction to address. There's no jurisdiction to address it, there's no jurisdiction to address it, but they are separate arguments and any other questions, we'll rest on our brief, too. Thank you. In regard to my request to this court to have the matter reinstated and to assign it to a different court, again, that the case was pending with the court below for four years. The record is replete with sheer hostility, viciousness against my attorneys and myself. Again, whenever we requested or tried to request or move for any form of relief with any given set of circumstances, we were met with extreme hostility. Counsel for the defendants, again, this isn't a sexual harassment case, a retaliation case. There is a slew of factual information in regard to all of the evidence to support the factual assertions, to support the claims that were filed. I would like to rebut what Mr. Lawrence said. The conduct, the vexatiousness of the matter of the litigation took place with counsel. They failed to disclose important information. They engaged in serious deception. They failed to be forthright with the court and with my attorneys. Unfortunately, the lower court rubber-stamped all of their applications. They were permitted to file repeated motions to dismiss the complaint, repeated motions . . . Well, but they weren't repeated motions to dismiss. First, there was a motion to dismiss the complaint that you originally filed. Then you asked for leave to amend to add new parties. The parties who were in the case opposed that, but they lost. You were permitted to amend the complaint. Then the new parties, as was their right, came in and moved to dismiss. That's not a repeated motion. That's a new motion by new parties that you brought into the case. But the new motion was actually challenged by Ms. Evans for the New York court system on all grounds, on 12B6 grounds, on statute of limitation grounds, on all grounds. The magistrate actually took over nine months to decide whether or not my amended complaint would be plausible and permitted to go forward. After that decision, several Ms. Evans continued to challenge the validity of the court's decision and of the amended complaint. It prompted us to have to continually amend and re-amend. Unfortunately, then my lawyers were attacked for doing exactly what they were told to do. In turn, I was also attacked. Mr. Lawrence mentions the fact that there were missed court appearances. I know of one instance, or perhaps two at best, where Mr. Ambrose Watterson, my lawyer at the time, and I was informed on the information by him that he notified the court his mother had passed away and he was not able to attend. I was not directed to be present for those various court appearances. All of these things that they continually attribute to me is so incredibly astonishing. I've never seen this. I was a prosecutor, an assistant district attorney and ethics counsel. I was also defense counsel for a number of years in private practice, primarily in the field of criminal defense law. I have appeared, although albeit not before the federal court, but I have never seen this type of activity on the part of any state agency or court agency. The statute of limitations, I think what's most important here is also the fact that I filed my EEOC complaint in May of 2009. I was forced to take a two-year unpaid leave of absence during the course of that time. The retaliation and the sexual harassment that have been alleged are extraordinary. They're not isolated events. They're not independent events. I think your brief does a good job of laying those arguments out before us and we'll consider whether they're properly before us at this time, which is an issue. Thank you very much for your argument today and thank you all. I will take it under submission. Thank you very much. That's the last matter on the calendar this morning and so I'll ask the clerk to adjourn court.